The Lake Erie and Western Railway Company *v.* Fix.

---

No. 9431.

## THE LAKE ERIE AND WESTERN RAILWAY COMPANY
### *v.* FIX.

PRACTICE.—*Harmless Error.*—It is harmless error to either sustain demurrers to or strike out answers which would not have entitled the defendant to any benefit not secured by the general denial also pleaded.

SAME.—*Bill of Exceptions.*—*Time of Filing.*— *Presumption.*—Time must be granted within which to reduce exceptions to writing; but where the bill is filed during the term, it will be presumed that time was given when the exception was taken.

SAME.—*Refusal to Instruct Jury to Answer Interrogatories.*—A jury can be directed to answer interrogatories only on condition that they find a general verdict, and the refusal of a request to unqualifiedly instruct the jury to answer interrogatories is not error.

RAILROAD.—*Passengers.*—A passenger upon a railroad train has a right to act upon the conduct and directions of the agents of the corporation.

SAME.—*Damages for Ejecting Passenger from Train.*—In an action against a railroad company to recover damages for the ejection of the plaintiff from one of its trains by an agent, the conductor thereof, the evidence showed that the plaintiff had purchased a round-trip ticket of the defendant's agent at one of its stations, entitling him to a passage to

| | |
|---|---|
| 88 | 381 |
| 125 | 233 |
| 88 | 381 |
| 152 | 671 |
| 88 | 381 |
| 154 | 448 |
| 88 | 381 |
| 161 | 160 |
| 161 | 186 |
| 161 | 187 |
| 161 | 188 |

and from another station on the line of the defendant's road; that shortly after entering the car a man came along, asked for the ticket, which was given him, tore it in two, handing back one and keeping the other part thereof; at about eleven o'clock the same night the plaintiff entered a car on the defendant's road to return to the station at which he had purchased the ticket, handed the conductor the part of the ticket returned to him by the man on the first train, which the conductor refused to accept, and upon the plaintiff's refusal to pay the fare demanded, notwithstanding his explanation and remonstrance, forcibly ejected him from the train. The man who took the ticket on the first train was a brakeman in charge thereof instead of the conductor, who was in concealment on the engine. The brakeman testified that he supposed that one-half of the ticket was good for a ride either way. The behavior of the plaintiff was orderly and gentlemanly.

*Held,* that the plaintiff was entitled to damages; and that $600 was not excessive.

SAME.—*Measure of Damages.*—In estimating the damages in such case, it is proper to consider the humiliation and degradation imposed upon the injured person by the wrong done him; and if such wrong is done under circumstances of peculiar indignity and degradation, that fact is to be considered as an element of compensation even in cases where vindictive damages can not be given.

From the Tippecanoe Circuit Court.

*H. W. Chase, F. S. Chase* and *F. W. Chase,* for appellant.
*J. R. Coffroth* and *T. A. Stuart,* for appellee.

ELLIOTT, J.—This action was instituted by the appellee to recover damages for the wrongful act of the appellant's servants in ejecting him from one of its passenger trains. The answers struck out on motion and to which demurrers were sustained, would not have entitled the appellant to any benefit not secured by the general denial pleaded, and if there was any error in these rulings it was a harmless one.

The court refused to propound to the jury interrogatories asked by appellant. Appellee contends that no question is saved upon this ruling, for the reason that time was not given in which to reduce the exception to writing. This contention can not prevail. The bill of exceptions was filed during the term at which the ruling was made, and the presumption is that time was granted to reduce the exception to writing,

and that it was put in writing within the time limited. Time must be granted within which to reduce exceptions to writing, but where the bill is filed during the term it will be presumed that time was given when the exception was taken. *Volger* v. *Sidener*, 86 Ind. 545 ; *Pitzer* v. *Indianapolis, etc., R. W. Co.*, 80 Ind. 569.

The request to propound interrogatories is in these words : " The defendant requests the court to instruct the jury to find specially upon the following particular questions of fact," and the appellee insists that the court was justified in denying this prayer, for the reason that the defendant was entitled to have answers to interrogatories only in case the jury should return a general verdict. It is true of instructions generally that it is not error to refuse them unless it is proper to give them in the terms prayed. *Lawrenceburgh, etc., R. R. Co.* v. *Montgomery*, 7 Ind. 474.

The question here is whether the instruction prayed as to the interrogatories falls within the general rule that it is not error to refuse them unless they ought to be given as prayed. The code requires that interrogatories shall be answered only in cases where a general verdict is returned, and the decisions hold that it is not error to refuse them unless they are asked in accordance with the provision of the statute, thus bringing instructions upon this subject within the general rule. In *Bird* v. *Lanius*, 7 Ind. 615, it was said : "All that we decide is, that a party can not require special interrogatories to be answered, except on condition that the jury shall elect to return a general verdict. The request made by the defendants was unqualified, and was therefore properly refused." This doctrine has been frequently approved. *Board, etc.,* v. *Kromer*, 8 Ind. 446 ; *Adams* v. *Holmes*, 48 Ind. 299 ; *Hopkins* v. *Stanley*, 43 Ind. 553 ; *Killian* v. *Eigenmann*, 57 Ind. 480 ; *Hodgson* v. *Jeffries*, 52 Ind. 334 ; *Ogle* v. *Dill*, 61 Ind. 438, *vide* p. 443.

The controlling questions in the case arise on the evidence ; that given on the part of the appellee fully establishes these facts : On the 5th day of May, 1880, the appellee bought of

The Lake Erie and Western Railway Company v. Fix.

appellant's agent, at its station of Ambia, a round trip ticket, entitling him to a passage to the station of Boswell and back to that of Ambia; the appellee entered appellant's train; shortly afterwards a man came along, asked for the ticket; it was handed him, he tore it in two, kept one part, and handed back another part; appellee did not notice what part was handed back to him; about eleven o'clock, of the same night, he entered appellant's train to return to Ambia; handed the the conductor the part of the ticket which he had received from the man on the other train; the conductor refused to accept the ticket, and, notwithstanding the explanation of appellee, and against his remonstrances, ejected him from the train. The man who took and tore up the ticket was not the regular conductor, but was a brakeman in charge of the train instead of the conductor, who was concealed on the engine, in order to prevent arrest upon a warrant held against him by a constable in Ambia; the brakeman in charge of the train testified that he supposed that one-half of the ticket was good for a ride either way; the behavior and appearance of the appellee were orderly and genteel.

This evidence, and it was not materially contradicted, made a case for the appellee. It showed that he had purchased a ticket entitling him to be transported from Ambia to Boswell and back; and that if there was any wrong in improperly separating the parts of the ticket the wrong was that of the company's agent, and not that of the passenger. One who acts in good faith ought not to be deprived of his rights through the fault of the servant of the carrier who has undertaken to carry him safely. It is the duty of carriers to provide agents and servants who can, and will, properly protect the interests of passengers, and not by want of skill, lack of knowledge, or want of care, take from passengers rights for which they have contracted and paid. In *Pittsburg, etc., R. W. Co.* v. *Hennigh,* 39 Ind. 509, the passenger gave to the conductor his ticket from Chicago to New Castle; no check was given him; there was a change of conductors between the two points, and the last

conductor ejected him because he had no check, and it was held that an action would lie.    The facts in the case of *Toledo, etc., R. W. Co.* v. *McDonough,* 53 Ind. 289, were, substantially, these : A passenger purchased a ticket entitling him to ride to Fort Wayne ; he entered a car attached to a freight train ; the conductor of this train took up his ticket, gave him an ordinary conductor's check, showing that he was a passenger to the city named above ; he desired to get to that city sooner than the freight train would carry him ; the conductor advised him to get on the express train at the station of New Haven, and assured him that the check given him would secure a passage to his destination ; the passenger, acting on the advice and assurances of the conductor of the freight train, entered the express train ; the conductor of that train refused to accept the check, and ejected him from the train, and the plaintiff was held to be entitled to a recovery.    In the case of *Palmer* v. *Railroad,* 3 S. C. 580 (16 Am. R. 750), the plaintiff purchased a ticket of the defendant's agent, entitling him to a passage from Charlotte to Augusta, with the privilege of stopping over at Columbia ; the ticket contained separate coupons from Charlotte to Columbia, and from Columbia to Augusta ; the conductor, between Charlotte and Columbia, took off both coupons and gave the passenger a conductor's check ; plaintiff stopped off at Columbia, and on the next day entered another train ; the conductor of that train refused to receive the check given him the day before, and ejected him ; the court, after a full discussion, held that he was entitled to his action.    The principle laid down in *Hamilton* v. *Third Avenue R. R. Co.,* 53 N. Y. 25, is the same as that acted upon in our own cases.    In the case cited a passenger got on a car, paid his fare, was transferred to another, the conductor demanded fare, he refused to pay, and it was held that he was entitled to damages for his expulsion from the car. Our cases also find support in the well reasoned case of *Burnham* v. *Grand Trunk R. W. Co.,* 63 Maine, 298 (18 Am. R. 220).

Appellant cites the case of *Jeffersonville R. R. Co.* v. *Rogers,* 28 Ind. 1, but that case affords no support to the theory of counsel. On the contrary, it is against it; for there the court held that a passenger who found a ticket office closed was entitled to be carried at the rate of fare prescribed in cases where tickets were purchased, and that he had a right of action for his expulsion from the train, although he tendered the conductor no more than the ticket rate of fare. In *Toledo, etc., R. W. Co.* v. *Wright,* 68 Ind. 586 (34 Am. R. 277), the passenger had neither bought a ticket nor paid his fare. The case of *Shelton* v. *Lake Shore, etc., R. W. Co.,* 29 Ohio St. 214, is plainly distinguishable from the present. In that case the passenger had bought a commutation ticket which contained a contract which he was required to sign, and a provision that if it was presented unsigned the company's conductor should take it up. It was presented without having been signed and was taken up. The passenger afterwards got on another train without a ticket, refused to pay fare and was ejected. It is clear that in the case cited the passenger was in the wrong, because he had not signed the contract as the terms of the ticket required him to do. The cases of *Chicago, etc., R. R. Co.* v. *Griffin,* 68 Ill. 499, *Frederick* v. *Marquette, etc., R. R. Co.,* 37 Mich. 342 (26 Am. R. 531), and *Townsend* v. *New York, etc., R. R. Co.,* 56 N. Y. 295 (15 Am. R. 419), were cases in which the ticket agent gave the passenger tickets to the wrong station, and it was held that the conductor was not bound to take the statement of the passenger, and might eject him, but that an action would lie against the company for the ticket agent's wrong. These cases can not be regarded as here in point, for in this instance the passenger bought the ticket he was required to have, surrendered it to the proper agent of the company on demand, received back what the agent of the corporation believed to be the proper evidence of a right to return, and presented this to the conductor when called on. It is clear that the passenger was guilty of no wrong, was not without evidence of his right to transportation, and had obeyed

the directions of the company's agents. In a case decided by the Illinois court, the passenger was unable to buy a regular ticket on account of the inability of the agent to furnish him with one. The agent wrote a statement showing that fact, which the conductor refused to act upon, and expelled the passenger; and for this act the corporation was held responsible. *St. Louis, etc., R. R. Co.* v. *Dalby*, 19 Ill. 352. This was the ruling in *Jeffersonville R. R. Co.* v. *Rogers, supra,* and the principle underlying these cases supports the decisions in the cases first cited, for if the passenger is held to be in the right where he does all a prudent man can in the one case so must it be held where he so acts in the other. The holding of our courts harmonizes with the well recognized general rule that a passenger has a right to act upon the conduct and directions of the agents of the corporation. *Siner* v. *Great Western R. W. Co.*, L. R. 3 Exch. 150; *Pennsylvania R. R. Co.* v. *McCloskey*, 23 Pa. St. 526; *Chicago, etc., R. R. Co.* v. *Randolph*, 53 Ill. 510; S. C., 5 Am. R. 60; *Lambeth* v. *North Carolina R. R. Co.*, 66 N. C. 494; S. C., 8 Am. R. 508; *Bridges* v. *North London R. W. Co.*, L. R. 6 Q. B. 377; *Georgia, etc., Co.* v. *McCurdy*, 45 Ga. 288; S. C., 12 Am. R. 577; *Bayley* v. *Eastern R. R. Co.*, 125 Mass. 62.; *McIntyre* v. *New York, etc., R. R. Co.*, 37 N. Y. 287.

It is urged that the damages are excessive, and that $600 is more than the appellee was entitled to recover. The evidence bearing upon this branch of the case, shortly stated, is, that appellee was expelled from the train about eleven o'clock at night several miles from any station and seven miles from Ambia, his destination; no abusive language was used by the conductor, but he refused to accept the ticket offered by the appellee, stopped the train, commanded the latter to get off, placed his hand on the appellee's shoulder and conducted him to the steps of the car; this was done in the presence of several passengers, against the protestations of the appellee, and in disregard of his statements and explanations.

In estimating compensatory damages, it is proper to con-

sider the humiliation and degradation imposed upon the injured person by the wrong done him. The fact that the wrong is done under circumstances of peculiar indignity and degradation is to be considered as an element of compensation, even in cases where vindictive damages can not be given. In *Taber* v. *Hutson*, 5 Ind. 322, the court held that only compensatory damages were recoverable by the plaintiff, but said : " He was not, it is true, ' confined to the proof of actual pecuniary loss ; the jury might have taken into consideration every circumstance of the act which injuriously affected the plaintiff, not only in his property; but in his person, his peace of mind, in short, his individual happiness.'" In *McKinley* v. *C. & N. W. R. Co.*, 44 Iowa, 314 (24 Am. R. 748), this question was carefully considered and many cases reviewed. The court said : "As we have seen, mental anguish arising from the injury, that is, pain caused by the wound or broken arm, constitutes an element of compensatory damages, and we, on principle, are unable to see why mental pain arising from or caused by the nature and character of the assault whereby the wound was inflicted or arm broken, should not also be an element of such damages." At another place in the same opinion it was said : "A careful examination of the authorities will disclose the fact that the weight of adjudicated cases is in favor of the proposition, that mental anguish arising from the nature and character of the assault is an element of compensatory damages." In the powerful opinion of RYAN, C. J., in *Craker* v. *Chicago, etc., R. W. Co.*, 36 Wis. 657 (S. C., 17 Am. R. 504), the correctness of this doctrine is demonstrated. The case just cited received the approval of this court in the case of *American Ex. Co.* v. *Patterson*, 73 Ind. 430. The doctrine declared in *Taber* v. *Hutson*, *supra*, has been often declared and enforced by our own decisions. *Cox* v. *Vanderkleed*, 21 Ind. 164; *Fisher* v. *Hamilton*, 49 Ind. 341 ; *Wright* v. *Compton*, 53 Ind. 337. In the case of *St. Louis, etc., R. W. Co.* v. *Myrtle*, 51 Ind. 566, the passenger was wrongfully expelled from the train, and it was held that $562 was not an excessive

assessment of damages. In *Jeffersonville R. R. Co.* v. *Rogers*, 38 Ind. 116 (10 Am. R. 103), the verdict in a like case was for $1,000, and the court refused to disturb it. The case of *Indianapolis, etc., R. R. Co.* v. *Milligan*, 50 Ind. 392, supports the general proposition as to the right of recovery, and holds that a verdict for $700, is not excessive.

The general rule is that a verdict will not be set aside on the ground of excessive damages unless they are such as at first blush appear to be outrageous. *Yater* v. *Mullen*, 23 Ind. 562; *Reeves* v. *State, ex rel.*, 37 Ind. 441; *Alexander* v. *Thomas*, 25 Ind. 268.

In estimating damages in this case several elements deserve consideration. The charge of the conductor, that the appellee was endeavoring to cheat the company by attempting to secure a ride on a false pretense that he had a valid ticket, was such as to humiliate and degrade him. It placed him in a degrading position; to pay fare in response to the conductor's demand was to confess that he was endeavoring to secure a ride by dishonest means, and almost any honest man would subject himself to expulsion before doing an act that would impliedly, if not expressly, fasten upon him the charge of falsehood and dishonesty, and there was no alternative; either the fare must be paid and the confession made, or the passenger must stand to his word and suffer expulsion from the train. The wrongful act of the appellant caused him a long walk in a dark night, exposed to danger, and an exposure to danger is an element for consideration in such cases. *Seger* v. *Town of Barkhamsted*, 22 Conn. 290; *Masters* v. *Town of Warren*, 27 Conn. 293; *Lawrence* v. *Housatonic R. R. Co.*, 29 Conn. 390. In addition to this the appellee suffered considerable physical pain for some time, and taking all these elements into consideration, we do not think that the damages were excessive, even upon the theory that the appellee was only entitled to recover compensatory damages.

Judgment affirmed.

The Lake Erie and Western Railway Company *v.* Fix.

ON PETITION FOR A REHEARING.

ELLIOTT, J.—It is claimed in appellant's petition for a rehearing that the court incorrectly stated some of the material facts, but we have again carefully read the evidence and find that counsel, and not the court, are in error. It is said that the court was mistaken in stating that the passenger was guilty of no wrong, and was not without evidence of his right to transportation; but we think that again the counsel are at fault. The appellee had purchased and paid for a ticket which entitled him to be carried from Ambia to Boswell and back, and the agent of the corporation returned to him the part of the ticket that the agent himself swears he thought was evidence of the passenger's right to return, and this, we think, clearly warranted our inference that the passenger was not without evidence of his right to transportation.

Counsel write in their brief the following: "We confess to a sensitiveness on the part of the managers of the appellant, which is shared by us as its attorneys in this court, to the way in which the absence of conductor Godfrey from his post of duty is accounted for in the opinion." We said in our opinion: "The man who took and tore up the ticket was not the regular conductor, but was a brakeman in charge of the train instead of the conductor, who was concealed on the engine, in order to prevent arrest upon a warrant held against him by a constable in Ambia." The conductor himself swears: "I was on the engine hiding from the constable." The brakeman testified that "He, the conductor, told me that there was a warrant out at Ambia for him for obstructing a crossing, and that he did not want to be arrested, because he had no money to pay his fine."

It is also complained that we did not mention the fact that the train in charge of the brakeman was a freight train, and yet, in the same paragraph in which this complaint is made, the counsel concede that it carried passengers, and say: "We do not take the ground that a railroad company which re-

ceives passengers upon a freight train is not bound to carry them just as safely as though they were taken in a regular passenger train."

We adhere to the rule which governs this case as declared in our own decisions, not solely on the ground of *stare decisis*, but also because we believe the principle enunciated to be the correct one.

Petition overruled.