The Chicago, St. Louis and Pittsburgh Railroad Company *v.* Holdridge.

Filed April 16, 1889.

No. 13,695.

## The Chicago, St. Louis and Pittsburgh Railroad Company *v.* Holdridge.

Railroad.—*Round-Trip Ticket.—Return Coupon.—Rights of Passenger as to.*—Where one, holding an unused round-trip ticket from W. to M., two stations upon the line of a railroad, enters upon a train at M., the return station, he is entitled to have the return part of such ticket, by whomsoever detached from the other part, accepted in payment for his transportation to W.

Same.—*Expulsion from Train.— Liability of Company.*—If a conductor refuses to accept a return coupon from a passenger, upon the return journey, who detaches such coupon from the other part of the ticket in his presence and tenders the same to him, and requires the passenger to leave the train at the next station, in order to avoid forcible expulsion, he is guilty of an act of oppression for which the railroad company is liable.

Same.—*Damages.— What not Excessive.*—A passenger, who was entitled to be carried to his destination upon a ticket tendered by him but refused by the conductor, in pursuance of the commands of the latter left the train at the next station to avoid forcible expulsion, but he immediately

boarded the train again, paid his fare from that station to his destination, and was duly carried there.

*Held*, that two hundred dollars damages are not excessive compensation for the feelings of humiliation and shame suffered by him.

ELLIOTT, C. J., and MITCHELL, J., dissent.

From the White Circuit Court.

*N. O. Ross*, for appellant.

*W. E. Uhl*, for appellee.

COFFEY, J.—This cause was decided in the circuit court upon an agreed statement of facts. The material facts, as agreed upon, are, that, on the 8th day of July, 1886, the appellee purchased from the ticket agent of the appellant a round-trip ticket from the town of Walcott to the town of Monticello and return, said towns being regular stations on the appellant's road. Said ticket had printed on one end thereof, commencing in the middle of the paper on which they were printed, and extending down to one end, these words: "Chicago, St. L. & Pitts. R. R. Co. Walcott, Ind., to Monticello, Ind. Good for continuous trip only on trains stopping at points named, when stamped by selling agent. Not good if detached. 7014." And on the reverse end, commencing in the middle and extending down to the end, were printed these words: "Chicago, St. L. & Pitts. R. R. Co. Monticello, Ind., to Walcott, Ind. Return ticket. Good for continuous trip within thirty (30) days from date of sale, on trains stopping at points named. 7014." The ticket was stamped by the selling agent July 8th, 1886. On the day of the date of said ticket, the appellee entered one of the appellant's regular trains at Monticello as a passenger, to be conveyed to Walcott, at which last named place said train stopped to receive and discharge passengers. After the train had started on its trip, the appellee tendered to the conductor in charge of said train the said ticket in payment of his fare, no part of which ticket had been used, cancelled or detached. Appellee was informed by the conductor that if he received the ticket in payment of his fare he would have to retain the

whole ticket, which the appellee refused to permit him to do, and insisted that the first part of the ticket, which was for a passage from Walcott to Monticello, should be returned to him. The conductor then returned the ticket to the appellee, and told him he could keep the ticket and pay his fare or he must get off the train. The plaintiff then, in the presence of said conductor, detached the return part of the ticket and tendered it in payment of his fare, which the conductor refused to accept, and told him he must pay his fare or get off at the next station, and then left him. When the train stopped at Reynolds, which was the first station after leaving Monticello, in obedience to the conductor's order, appellee stepped off the train to the platform, and remained there until the conductor cried " all aboard," when he again entered said train, paid his fare from that point to his destination, which was twenty-five cents, and was carried to Walcott. He left said car at Reynolds to avoid forcible expulsion. The regular fare, on said 8th day of July, 1886, from Monticello to Walcott was forty-five cents for all persons not having a round-trip ticket, and a like sum from Walcott to Monticello, a reduction of ten cents being made for those who bought round-trip tickets. At said date, conductors on the appellant's road were under orders to take up the whole of round-trip tickets when tendered in payment for fare from the return station, unless the holder chose to keep the ticket and pay full fare, which was one of the rules adopted by the appellant, but the public generally had never been apprised of said rule, by publication or otherwise, and the appellee had no notice of such rule until the time complained of. No part of said ticket has since been used, either by the appellee or any one else.

Upon these facts the court found for the appellee, and assessed his damages at two hundred dollars. Over a motion for a new trial the court rendered judgment on said finding.

The errors assigned are :

1st. That the court erred in its conclusions of law upon the agreed facts.

2d. That the court erred in rendering judgment in favor of the appellee for two hundred dollars ; and,

3d. That the court erred in overruling the motion for a new trial.

It is clear that the appellee had the right to demand of the appellant that he be transported from Monticello to Walcott on his return ticket, and that when such ticket was tendered to the conductor it was his duty to accept it in payment of such transportation. There was nothing in the contract between the parties which gave to the appellant the exclusive right to detach that part of the ticket which gave the appellee the right to ride on the appellant's road from Walcott to Monticello from the return ticket. If it became worthless by reason of being detached by the appellee, that furnished the appellant no excuse for refusing to accept the return ticket. The appellee was rightfully on the appellant's train, and had the right, as we have said, by the terms of the contract, to be transported from Monticello to Walcott, and the act of the conductor requiring him to leave said train in order to avoid forcible expulsion was an act of oppression for which the appellant was liable.

It is claimed, however, by the appellant that the damages assessed by the circuit court are excessive. In the well considered case of *Lake Erie, etc., R. W. Co.* v. *Fix*, 88 Ind. 381, the authorities upon this subject are collected and carefully considered. In that case, ELLIOTT, J., who wrote the opinion, says : " One who acts in good faith ought not to be deprived of his rights through the fault of the servant of the carrier who has undertaken to carry him safely. It is the duty of carriers to provide agents and servants who can, and will, properly protect the interests of passengers, and not by want of skill, lack of knowledge, or want of care, take from passengers rights for which they have contracted and paid." In discussing the question of damages, in that case, the court

says : " In estimating compensatory damages, it is proper to consider the humiliation and degradation imposed upon the injured person by the wrong done him. The fact that the wrong is done under circumstances of peculiar indignity and degradation is to be considered as an element of compensation, even in cases where vindictive damages can not be given. In *Taber* v. *Hutson,* 5 Ind. 322, the court held that only compensatory damages were recoverable by the plaintiff, but said : ' He was not, it is true, confined to the proof of actual pecuniary loss; the jury might have taken into consideration every circumstance of the act which injuriously affected the plaintiff, not only in his property, but in his person, his peace of mind, in short, his individual happiness.' "

In 3 Wood Railway Law, section 364, the learned author says : " Thus, where a party is forcibly and unlawfully ejected from a car, in the presence of other passengers, and the conductor publicly announces that the passenger has refused to pay his fare, a jury may properly find from such facts that the party thus ejected suffered feelings of shame and humiliation, without any other proof on that subject." In support of the text, the author cites *Chicago, etc., R. W. Co.* v. *Chisholm,* 79 Ill. 584, and *Chicago, etc., R. W. Co.* v. *Williams,* 55 Ill. 185.

In cases of this kind there is no rule by which the amount of damages to be recovered for shame, humiliation and injured feelings can be measured, and it must, of necessity, be left to the jury or the court trying the cause to fix the sum he shall have as compensation. The rule is that a verdict will not be set aside on the ground of excessive damages unless they are such as, at first blush, appear to be outrageous. *Yater* v. *Mullen,* 23 Ind. 562 ; *Reeves* v. *State, ex rel.,* 37 Ind. 441 ; *Alexander* v. *Thomas,* 25 Ind. 268. In the case of *Lake Erie, etc., R. W. Co.* v. *Fix, supra,* the damages assessed were $600, and it was held not to be excessive. In the case of *St. Louis, etc., R. W. Co.* v. *Myrtle,* 51 Ind. 566, the

damages assessed were $562, and it was held not to be excessive. In the case of *Jeffersonville, etc., R. R. Co.* v. *Rogers,* 38 Ind. 116, the damages assessed were $1,000, and the court refused to disturb the judgment. In the case of *Indianapolis, etc., R. R. Co.* v. *Milligan,* 50 Ind. 392, the damages assessed were $700, and it was held not to be excessive.

In this case, as we have said, the appellee was entitled to transportation on his return ticket from Monticello to Walcott, and tendered it to the conductor in payment of his fare. The conductor of appellant's train refused to receive such ticket, and wrongfully compelled the appellee to leave the train in order to avoid a forcible expulsion. The court had the right to infer from these facts that he was humiliated, and that his feelings were injured, and the right also to assess such damages as in its judgment would compensate the appellee for such injury. The amount assessed does not, at first blush, appear to be outrageous.

We find no error in the record for which the judgment should be reversed.

Judgment affirmed.

ELLIOTT, C. J., and MITCHELL, J., dissent.

Filed April 17, 1889.