McAdam, J.
On September 27,1890, the plaintiff in company with his son, Andrew J. Toomev, and a friend, Mr. Peppard, made a journey on the defendant’s road to Orange. Upon their return trip a dispute arose as to whether the tickets offered to the conductor entitled them to travel on his car. The dispute continued until the train reached Hoboken, and there the trio were arrested, under color of a New Jersey statute, which authorizes the apprehension of any person who attempts to travel in a carriage of any railroad company without having paid his fare, and with intent to avoid payment thereof. The offender forfeits to the company a sum not exceeding five dollars, which “fine” may be imposed “by any justice of the peace before-whom such person shall be brought on complaint made on oath or affirmation, and after a summary hearing of the facts and circumstances.”
The magistrate discharged the plaintiff and his companions, whereupon they brought separate suits against the" defendant to recover damages for causing their arrest and setting on foot the criminal prosecution aforesaid. The trials resulted in verdicts for the plaintiffs, but for different amounts. Andrew J. Toomey, the son, recovered six cents, which recovery the court at general term sustained upon the ground that the question as to the amount of damages, substantial or nominal, was without objection left to the good judgment of the jury, and there was no legal reason which required the court to disturb their finding. The present appeal is from a judgment of $500 recovered by the father, an elderly gentleman, who claims to have keenly felt the indignity of his arrest and suffered considerably from it. The fact that the son recovered six cents doek not prove that the father should have been similarly dealt with, nor does the fact that the jury awarded the latter $500 prove that the verdict in the son’s favor was too small. The jury in each case separately fixed the amount. The damages to be awarded in cases of this character must in the nature of things be left largely to the experience and sound judgment of a jury, and they naturally vary with the age and condition in life of the injured parties and the impression created on the minds of the jury. In Wood’s Mayne on ¡Damages, 1st -Am. ed., § 47, the author, speaking of the measure of such damages, says: “Where the person or character is injured, it is difficult, if not quite impossible, to fix any limit, and the verdict is generally a resultant of the opposing forces of the counsel on either side, tempered by such moderating remarks as the judge may think the occasion requires.” The verdict does not bear the evidence of bias or prejudice, and though substantial, is still reasonably moderate in amount, and one we are indisposed either to criticise unfavorably or disturb.
The court ought not to interfere with the assessment of damages by a jury further than to see that they have not abused the trust reposed in them or violated some settled rule of law.
The exceptions taken relate wholly to the charge and the requests and refusal to charge.
First. The defendant requested the court to charge that “If there was probable cause for making the complaint against the plaintiff, yet, if in making it the conductor did not act with *569 a malicious purpose, or with actual malice towards the plaintiff, the defendant is entitled to a verdict.”
The court charged the request, striking out the word “actual.” The request after all was substantially charged, and the jury were intelligently told that if there was no malicious purpose or malice on the part of the conductor towards the plaintiff, he could not recover. The word omitted did not detract from the force of the request made, for the jury had not been instructed in the technical distinction between legal and actual malice, and as applied to this case in the form submitted there was none. Malice in fact is found by the jury, malice in law by the court, and that submitted to them was necessarily of the former character, for the court made no finding and gave no binding instructions as to malice in law.
Second. The trial judge charged, at plaintiff’s request, “ that the uncontroverted evidence is that the damage was substantial and not nominal ” The defendant urges with earnestness its exception to this part of the charge, in view of the finding of nominal damages in the action by the plaintiff’s son, and the affirmance of that judgment by the general term. No such request was made in the action by the son, and the entire question of damages, nominal or substantial, was without objection left to the jury for their determination, and under such circumstances the general term was indisposed to interfere with a result which might have been guarded against and, perhaps, obviated by a specific request to charge that substantial damages must be awarded if they found for the plaintiff. The question, however, was squarely presented on the present trial, and the judge presiding met it with the direction that if they found for the plaintiff they must award substantial damages. We find no error in the instruction. Field on Damages, § 687; 3 Sutherland on Damages, 703. Taking an elderly man into custody and marching him through a crowded thoroughfare in charge of an officer, depriving him of his liberty, away from friends and facilities for bail, putting him on trial, causing fear and suspense, are acts sufficient to call for substantial rather than the mere nominal damages sometimes awarded for a mere technical trespass or wrong-doing.
Third. The trial j udge charged at plaintiff’s request “ that Burritt, the conductor, was chargeable with Slater’s knowledge that the plaintiff had delivered unpunched tickets to him.” Slator was the assistant conductor aiding Burritt in collecting tickets. A delivery to Slator was, therefore, tantamount to a delivery to Burritt, and the act was so regarded and intended. Under the circumstances the charge was right. It was the duty of the one to keep the other informed as to the collections made, that demands might not be made twice of the same passenger, and the implication of knowledge comes from the duty imposed of communicating it.
■Fourth. The defendant’s counsel requested the court to charge that “ the plaintiff, when applied to by the conductor, was bound to produce a proper and valid ticket as evidence of his right to ride the train, or his fare.” Such a regulation is cer *570 tainly reasonable, and for non-compliance therewith an offending passenger may be excluded from the car. Hibbard v. R. R. Co., 15 N. Y., 455; Townsend v. R. R. Co., 56 id., at p. 300; Homiston v. R. R. Co., 52 St. Rep., 1. No such right was exercised here ; on the contrary, the plaintiff was allowed to complete his journey, and was then arrested for stealing a ride. The trial judge replied to the request in these words: “ If he could do so, he was. If he had had a ticket and lost it, it was a subject of explanation. It was his duty either to produce a proper ticket, or pay his fare, or make some reasonable explanation why he didn’t do it.” While the rule is that as between conductor and passenger the ticket is the only evidence of the passenger’s right to be carried, 2 Wood’s Ry. Law, § 350; Thomp. on Carr., 337, §3, and explanations are not always to be taken, yet exceptions thereto will be found in several well considered cases in which it was held that the passenger has the right to make any explanations that will assist in determining his rights. R. R. Co. v. Bray, 125 Ind., 229; 25 N. E. R., 439; R. R. Co. v. Conley, 32 N. E. R., 96; R. R. Co. v. Fix, 88 Ind., 381. In R. R. Co. v. Bray, supra, the passenger had purchased a round trip ticket, and the conductor had retained the return coupon on the going trip by mistake, and the passenger did not discover the mistake until he presented to the conductor on his return trip the going coupon that he had retained, instead of the return coupon. The court held that under such circumstances the passenger had a right to be carried on his return trip on presenting the going coupon with proper explanation. See, also, R. R. Co. v. Holdridge, 118 Ind., 281.
The charge, in view of the facts and the cases cited, was a proper answer to the request, for it left the jury free to determine whether the plaintiff really had the proper ticket and how he had disposed of it, and whether, in view of the explanations given, the conductor acted with or without probable cause, in good faith or from malicious motives, in causing the plaintiff’s arrest after the journey was completed.
Fifth. The plaintiff’s counsel requested the court to charge, “ that if Burritt (the conductor) made the charge of a criminal complaint for the sole purpose of collecting a debt, and to prove himself right, they must find malice.” This was correct. Lynch v. R. R. Co., 90 N. Y., 77, 85. The arrest was justifiable only on the theory that the conductor in putting the plaintiff into custody was bringing him to justice pursuant to the New Jersey statute, before referred to, and for the purpose of being dealt with according to its provisions.
The five exceptions discussed are all that were urged on the argument against the judgment, and, for the reasons stated, we hold them to be without merit. The defendant was clearly liable to an action for the acts of the conductor, Rounds v. R. R. Co., 64 N. Y., 129, 134; Mott v. Consumers Ice Company, 73 id., 543, 547; Lynch v. R. R. Co., 90 id., 77, 86, and the damages not being excessive, the judgment and order appealed from must be affirmed, with costs.
*571 Freedman, J.
I concur, but desire to add that, although the jury were directed to give substantial damages in case they found for the plaintiff, they were, by another part of the charge, expressly confined to give compensatory damages only.