P. H. CHERRY, Appellant, v. THE KANSAS CITY, FORT
SCOTT & MEMPHIS RAILROAD COMPANY,
Respondent.

52  499
61  307

Kansas City Court of Appeals, January 16, 1893.

1. Passenger Carriers: TICKET WITH STOP-OVER PRIVILEGES:
ACTION. A first-class passenger ticket read "good to stop off at all
points." Held, this justified the passenger in stopping off at a
station short of his destination, and subsequently within the life of
his ticket taking another train to his destination, and though, on his
presentation to the conductor of his ticket with notice of his intention
to stop over, the conductor took it up, and gave no check or token in
lieu thereof, the passenger's rights will not be prejudiced, and the
same conductor with knowledge of all the facts will not be justified
in ejecting him from the train on his subsequent resumption of his
journey; nor is it incumbent on the passenger in such case to pay
the additional fare and sue for its recovery, but he may sue for damages
for the wrongful expulsion.

2. Judgment: FINAL: APPEAL. It is ruled on the authority of
Moody v. Deutch, 85 Mo. 237, that the judgment in this case would
sustain an appeal.

Appeal from the Barton Circuit Court.—HON. D. P.
STRATTON, Judge.

REVERSED AND REMANDED.

H. C. Timmonds, for appellant.

(1) If the conductor could have told from the
ticket presented to him, in connection with all the facts
at that time within his personal knowledge, that it had
not been used from Low Wassie to Grandin, then his
ejection of the passenger was wrongful. And it was
for the jury to say whether the conductor could so have
told or not. Kellett v. Railroad, 22 Mo. App. 356.
(2) A ticket in the hands of the passenger is not the
only evidence of his right to ride. Mackie v. Railroad,

9 S. W. Rep. 451; *Railroad v. Graham*, 29 N. E. Rep. 170; *Hufford v. Railroad*, 31 N. W. Rep. 544; *Murdock v. Railroad*, 137 Mass. 293. And, even if it were, this passenger handed this conductor the entire ticket, and the conductor did the only thing complained of by the company. (3) Where the passenger had originally had a ticket which has been surrendered to the conductor, and no check or voucher has been returned to the passenger, it is unlawful to eject him afterwards for failure to exhibit his ticket or pay fare. *Hamilton v. Railroad*, 53 N. Y. 25; *Townsend v. Railroad*, 4 Hun, 217; *Hennigh v. Railroad*, 31 Ind. 509; *Palmer v. Railroad*, 3 S. C. 580; s. c., 16 Am. Rep. 750; *Brauss v. Railroad*, 70 Ga. 368; *Moore v. Railroad*, 4 Gray, 465. (4) In the case at bar the passenger surrendered up to the same conductor who ejected him the whole ticket. That conductor detached part of it, and then ejected the passenger because that part had been detached. He had no right to do this, nor to demand cash fare. *Railroad v. Wolfe*, 27 N. E. Rep. 606; *Rice v. Railroad*, 64 Ind. 63. (5) It makes a difference in this case that all transactions were with the same conductor. *English v. Railroad*, 66 N. Y. 454.

*Wallace Pratt* and *J. C. Cravens*, for respondent.

(1) A ticket is the only evidence that the conductor can recognize that the holder has a right to ride on that particular train. *Hamilton v. Railroad*, 51 N. Y. 104; *Deitrich v. Railroad*, 71 Pa. St. 432; *Cheeny v. Railroad*, 11 Met. 121; *Bartram v. Railroad*, 11 Ohio St. 457; *State v. Overton*, 4 Zab. 438; *Johnson v. Railroad*, 45 N. H. 213; *Beebe v. Ayer*, 28 Barb. 275; *Stone v. Railroad*, 47 Iowa, 82. This last case is in all respects identical with the one at bar, except in this

case we have the same conductor, but on a different train and different day.   (2) A railroad ticket, while it is not the contract between the holder and the railroad company, is the only evidence of the party's right to be carried without further payment.   *Logan v. Railroad,* 77 Mo. 663; *Davis v. Railroad,* 53 Mo. 317; *Kellett v. Railroad,* 22 Mo. App. 356; *Brien v. Railroad,* 50 Tex. 43; *Rawson v. Railroad,* 42 N. Y. 217; *Gordon v. Railroad,* 52 N. H. 599; *Yordon v. Railroad,* 54 Wis. 234; *Bradshaw v. Railroad,* 135 Mass. 407.   (3) The passenger must present a proper ticket or pay his fare, and he can neither by extrinsic evidence of any kind, nor by an appeal to a conductor's memory of transactions of a previous day on a different train, prove himself exempt from doing one or the other.   *Fredrick v. Railroad,* 37 Mich. 342; *Hibbard v. Railroad,* 15 N. Y. 455; *Bartram v. Railroad,* 11 Ohio St. 457.

GILL, J.—This is an action for damages because of plaintiff's alleged wrongful ejection from one of defendant's passenger trains.   At the close of plaintiff's evidence the trial court sustained a demurrer thereto, whereupon a nonsuit was taken with leave, etc., and, and after an unsuccessful motion to set the same aside, plaintiff appealed to this court.

As is our duty then, we concede every fact in plaintiff's behalf, which his evidence tended reasonably to establish; and we find that such testimony tended to prove the following state of facts:   At two o'clock on the morning of the eighteenth of August, 1890, plaintiff went aboard the defendant's regular passenger train at Lamar, Missouri, to ride on defendant's railroad from Lamar, Missouri, to Grandin, Missouri, and return.   Just before boarding the train, plaintiff purchased of defendant's station agent at Lamar a round-trip ticket, from Lamar to Grandin and return, good

for thirty days, and entitling him to stop off at all points.

The distance from Lamar to Grandin is two hundred and thirty-six miles. The defendant's passenger conductors were changed at Springfield and again at Willow Springs; so that plaintiff would ride with one conductor from Lamar to Springfield, with another from Springfield to Willow Springs and with a third (the one who ejected him) from Willow Springs to Grandin, his destination. There was but one passenger train running between Willow Springs and Grandin, a distance of eighty-one miles, and but one conductor, who made the round trip from Willow Springs to Grandin every day, leaving Willow Springs each morning, and returning there each evening.

After leaving Lamar at two o'clock on the morning of the eighteenth of August, plaintiff presented his ticket to the first conductor, who honored it to Springfield. After leaving Springfield he presented it to the second conductor, who honored it to Willow Springs. After leaving Willow Springs, about 8:30 on the morning of the eighteenth, the same day of its date and purchase, he presented it to the third conductor, and at the same time informed this conductor that he intended to stop off at Winona, a station thirty-eight miles east of Willow Springs. (He was going east.) The conductor made no reply, but took the ticket, honored it, tore off the going coupon (he being the last conductor through whose hands it would pass), and handed the remainder of the ticket back to plaintiff. The conductor did not give the passenger any slip or check, nor anything in lieu of the detached coupon; but simply handed the main ticket back to the passenger. The passenger was carrying the ticket in an envelope, furnished him by the station agent who sold it to him, and when the conductor handed it back to him he put it in his pocket with-

out noticing what the conductor had done. When the train stopped at Winona, plaintiff got off and remained there till the same train, in charge of the same conductor, came along the next day (the nineteenth), when he again boarded the train to finish his journey to Grandin, forty-three miles away. When the conductor came around to take up tickets, plaintiff handed him the envelope and ticket in exactly the same condition it was in when this same conductor handed it back to him on the previous day; but the conductor refused to honor the ticket, refused to carry the passenger on it, and demanded the payment of cash fare from Winona to Grandin. The passenger refused to pay cash fare, and was, by the conductor, forcibly ejected from the train at the next station, Low Wassie, where he was left; and after getting dinner at a farm house, he went to Grandin on a freight train, which followed the passenger some two or three hours. It may be proper to say also that Cherry and the conductor were personally well acquainted with each other, and had been since the preceding June.

I.  In our opinion the lower court committed error in turning the plaintiff out of court after he had made the showing above indicated. The ticket which the plaintiff held, and which he presented to Abernathy, the conductor, gave evidence of the right to ride, and of Cherry's right, too, to stop over at any station intermediate between Lamar and Grandin. The main ticket read, "Good for one first-class passage to Grandin, Missouri, and return," and further on, in the going and returning coupons, it was stated to be "good to stop off at all points." By the terms, then, of this memorandum of the contract between the defendant railroad company and the plaintiff he had purchased the right to do just as he attempted—to ride to Winona, get off, and at a future time, within the

dates mentioned in the ticket, to enter again one of defendant's trains and finish the journey to Grandin. In other words, the ticket issued by the defendant and held by the plaintiff justified the plaintiff in going on the train to Winona August 18, stopping over till the next day, and then to take another train of the same road on to his destination. If this was Cherry's right under the contract, how did he lose it? If parted with at all it must have been because the conductor, Abernathy, detached and took from the plaintiff the going coupon before he should have done so. At some point between Willow Springs and Winona (a distance of thirty-eight miles) the conductor called for Cherry's ticket. The plaintiff passed it over to the conductor under the cover of an envelope, and at the time advised him (the conductor) that he (Cherry) would stop off at Winona. Cherry paid no attention to the conductor's treatment of the ticket, but when handed back placed it in his pocket, and did not examine it again until the next day when he again passed it over (inclosed in the same envelope) to the same conductor; and from what occurred then it would seem that plaintiff was denied passage because of the absence of the going coupon, which the evidence tends to show had been detached the previous day by this same conductor. Now we ask again, what had this plaintiff done, or omitted to do, that caused a forfeiture of his right under his contract with the defendant company?

This is not a case where a party attempts to ride without a ticket (as seems to be counsel's contention). Admitting an imperative necessity on the passenger to produce a ticket showing his right to be carried over the road (or the payment of a cash fare), conceding the duty of the conductor to be such that he must demand a ticket (or the cash), and that he is not called on to take the word of the passenger, or to "stop

and take evidence," and yet this defense is not made out by the evidence; for, if we are to give full force to plaintiff's testimony, he had a ticket entitling him to ride over this branch road from Willow Springs to Grandin, and entitling him to stop at any and all way stations, and that this ticket was presented to the conductor, accompanied with advice from the passenger that he would stop over at Winona; that with the conductor's knowledge plaintiff did stop off at Winona the eighteenth, and resumed his journey on the same train going east the next day, and again presented the main ticket, which, in connection with matters of his, the conductor's own knowledge fully informed said conductor that the ticket had not been used from Winona to Grandin, and that the same was presented by the proper person. The main ticket had indorsed on the face thereof the name of P. H. Cherry as the passenger, and the party presenting the ticket was so known by the conductor who had taken up the going coupon, and who fully understood, too, how this break in the passage had occurred. If the conductor could have told from the appearance of the ticket when presented to him the second time (taken in connection with all the facts within his personal knowledge at the time) that it had not been used on that portion of the road from Winona to Grandin, then clearly he was not justified in ejecting the plaintiff. *Kellett v. Railroad,* 22 Mo. App. 368. And that the ticket could not have been used going east from Winona to Grandin between the afternoon of the eighteenth and noon of the nineteenth was apparent to the conductor under the facts and circumstances which the evidence tended to prove. That the conductor took up the going coupon on the first day and declined or neglected to give the passenger a check or token in lieu thereof, but trusted to his own personal knowledge of the passenger whereby

to identify him, ought not to prejudice the rights of the plaintiff.

We have read and considered all the cases cited by defendant's counsel, and find in them no precedent for the position here contended for by him. The following, among others, however, sustain plaintiff's claim: *Kellett v. Railroad*, 22 Mo. App. 356; *Railroad v. Rice*, 64 Md. 63-66; *Head v. Railroad*, 79 Ga. 358, 364; *Railroad v. Hennigh*, 39 Ind. 509; *Palmer v. Railroad*, 3 S. C. 580; *Townsend v. Railroad*, 4 Hun (N. Y.) 217.

The suggestion is made in defendant's brief that, even to admit plaintiff's right to ride on defendant's road at the time, yet he ought to have paid the additional fare demanded and sued for the return thereof as money paid under duress, unless the same was refunded. Notwithstanding the rulings of some of the courts which look that way, we think no such course was incumbent on the plaintiff, since he would thereby be purchasing a right he had already. "The plaintiff was under no obligation to purchase, even for a trifle, the right which was already his own." *Railroad v. Rogers*, 28 Ind. 1; *Graham v. Railroad*, 29 N. E. Rep. 170. By the purchase of his ticket, entering the car and displaying to the conductor the evidence entitling him to a passage, a duty arose on the part of the railroad company to carry the plaintiff over the route he sought to travel. By the company's refusal to perform this duty, and forcibly expelling the plaintiff from the train, a case was made, to-wit, an action for damages for the wrong thus inflicted on the plaintiff.

Defendant's counsel make some objection to the formality of the judgment from which this appeal was taken; it is suggested that it is not such a final judgment from which an appeal would lie. The objection is not well taken. A judgment similar in form was

held by our supreme court to be sufficient. *Moody v. Deutch*, 85 Mo. 237.

Judgment reversed, and cause remanded. All concur.